**STATE of Missouri ex rel. Allan R. HOFFMAN, Relator,**

**v.**

**Honorable Robert Lee CAMPBELL, Judge of Division 15 of the St. Louis County Circuit Court, 21st Judicial Circuit, St. Louis County, Missouri, Respondent.**

**No. 33013.**

St. Louis Court of Appeals.

Missouri.

May 21, 1968.

Max Sigoloff, St. Louis, for relator.

Richard Wolff, St. Louis, for respondent.

CLEMENS, Commissioner.

This is an original proceeding in prohibition. Our preliminary writ prohibited the respondent circuit judge from compelling the relator to answer twenty interrogatories put to him by his former wife concerning his financial affairs. The parties have now briefed and argued the case. The issue concerns the relative rights of the interrogator and the respondent in discovery procedures.

The area of permissible interrogatories is bounded by Civil Rules 57.01(b) and 56.-01(a). V.A.M.R. Rule 57.01(b) says, "It is not ground for objection that the [information] will be inadmissible at the trial if the [information] sought appears reasonably calculated to lead to the discovery of admissible evidence." But this broad area is restricted by Rule 56.01(a), which says, "The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, undue expense, embarrassment, or oppression." These boundaries frame the issue here.

Relator Allan R. Hoffman was divorced by his wife, now Sharla B. Smolly, in 1961. They had four children and the decree gave her custody and $80 a week for child support. In 1967 Mrs. Smolly moved to modify the divorce decree by increasing the amount of child support. She alleged that the children's needs had increased and "the defendant [relator Allan R. Hoffman] is now in a better financial condition than at the time said Divorce Decree was granted and is able to pay these additional costs." Mrs. Smolly filed interrogatories. Mr. Hoffman does not challenge her right to ask about his financial condition but does object to the broad sweep of the interrogatories, contending that forcing him to answer them all would cause annoyance, undue expense, embarrassment and oppression.

Mrs. Smolly filed 73 interrogatories, comprising 198 questions. Mr. Hoffman satisfactorily answered 53 interrogatories, comprising 143 questions. Thereby he gave information about his residence, marital status and dependents, and for the period 1961 to 1967 he detailed: his employment, interest and dividends received, description and custody of his business records, description and gross and net values of both real and personal property owned, business and personal savings and checking accounts, safe deposit box contents and changes therein, claims against other persons, accounts receivable, property held as bailee and in trust and in process of transfer, property conveyed in trust, property in anticipated testate and intestate succession, and conveyances and reconveyances in anticipation of litigation.

As to the other twenty interrogatories, however, Mr. Hoffman's answers were not fully responsive. Mrs. Smolly filed "objections" to these answers and asked the court to compel him to answer fully. The motion was argued and the respondent judge ordered Mr. Hoffman to answer, granting him leave, however, to seek our preliminary writ of prohibition.

We look now to these twenty interrogatories. Three stand out. Number 21 asked Mr. Hoffman the amount of his adjusted gross income for each year from 1961 to 1967. In the trial court Mr. Hoffman objected to giving this information publicly, on the ground of privilege, but offered to answer privately. Numbers 72–73 asked Mr. Hoffman whether he had personally prepared any financial statements in the past five years, for what purpose, and to whom they had been given. He answered only in part, saying he had given financial statements to corporations in which he was interested. Mr. Hoffman does not brief these points here, and we find that his objections to these three interrogatories are without merit. This, because his annual income and financial worth go to the heart of the motion to modify—his ability to support the children.

As to the other seventeen interrogatories, comprising fifty-one questions, we

bear in mind that for the past seven years Mr. Hoffman has been in the general real estate business and involved in numerous transactions. Respondent's counsel admits Mr. Hoffman's business is complicated and by the seventeen interrogatories now in issue seeks to learn "the history" of Mr. Hoffman's financial activity from 1961 to 1967. We need not quote the interrogatories. In summary, they probe for details of Mr. Hoffman's financial activities over the past seven years in these areas: all real estate and personal property transactions, including costs, sale prices, improvements and names of persons concerned; partnerships and joint ventures existing and dissolved, including dates, names, addresses, profits and divided and undivided surpluses; rentals received, including descriptions, depreciation and expenses; other income received and receivable, including names and addresses of sources; securities of all kinds owned, pledged and subject to option, including detailed descriptions, means of acquisition, and names, addresses and phone numbers of persons interested; all other property conveyed by sale, gift or otherwise, including amounts, dates, names and addresses; present creditors, including amounts, dates, security, names and addresses; accountants employed, including dates, names, addresses, services rendered, and reasons for employment.

In determining the propriety of these seventeen interrogatories, we bear in mind that the ultimate factual issue they point to is simply Mr. Hoffman's ability to pay the increased cost of supporting the children. (Weiss v. Weiss, Mo.App., 392 S.W.2d 646[1].) That ability will be measured by his earning capacity and financial worth. (Wonneman v. Wonneman, Mo. App., 305 S.W.2d 71[10].) This ultimate issue bears on the propriety of the interrogatories.

In the landmark case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, the court interpreted Rule 33 of the Federal Rules of Civil Procedure, from which Missouri's discovery rules were patterned, saying: "* * * discovery rules are to be accorded a broad and liberal treatment. * * * But discovery, like all matters of procedure, has ultimate and necessary boundaries." In Black & White Cabs of St. Louis v. Smith, Mo.App., 370 S.W.2d 669[7], this court said our rules of discovery contemplate the exercise of judicial discretion, and that unlimited discovery is not a matter of right. Similarly, in State ex rel. Hof v. Cloyd, Mo., 394 S.W. 2d 408, the court said: "The provisions for discovery by written interrogatories are liberal but they are not unlimited."

Under these decisions, and the two cited rules, reason requires that there be a rational relationship between the interrogator's need for the information sought and the respondent's burden in furnishing it. Thus, courts have the pragmatic task of weighing the conflicting interests of the interrogator and the respondent.

We apply these principles to the seventeen interrogatories before us. Any one of them might be "reasonably calculated to lead to the discovery of admissible evidence." The relevancy, however, does seem remote and tenuous in light of the ultimate factual issue being Mr. Hoffman's ability to support the children. But we do not consider each question standing alone. Instead, we also consider the fifty-three interrogatories Mr. Hoffman did answer and those we have said he must answer about his annual income and financial statements (Numbers 21, 72–73). With all that information available to Mrs. Smolly, we believe it would impose an undue burden upon Mr. Hoffman to further compel him to answer the remaining seventeen interrogatories. This, because the onerous task of digging out the mass of detailed information—much of it remote in time and only tenuously relevant to the ultimate issue—would impose a burden out of proportion to the probable benefit to Mrs. Smolly. In short, the additional seventeen interrog-

atories are oppressive and need not be answered.

Out preliminary writ is made permanent as to prohibiting the respondent from compelling the relator to answer interrogatories numbered 14, 15, 16, 17, 19, 20, 25, 29, 30, 31, 32, 58, 59, 64, 65, 70 and 71, and the writ is otherwise quashed. Costs are taxed against the relator.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, our preliminary writ is made permanent as to prohibiting the respondent from compelling the relator to answer interrogatories numbered 14, 15, 16, 17, 19, 20, 25, 29, 30, 31, 32, 58, 59, 64, 65, 70 and 71, and the writ is otherwise quashed. Costs are taxed against the relator.

ANDERSON, P. J., RUDDY, J., and JAMES H. KEET, Jr., Special Judge, concur.