Emma K. **JOHNSTON,**
**Plaintiff-Appellant,**

v.

Roger D. **JOHNSTON,**
**Defendant-Respondent.**

**No. KCD 29574.**

Missouri Court of Appeals,
Kansas City District.

Oct. 2, 1978.

Motion for Rehearing and/or Transfer
Denied Nov. 13, 1978.

Application to Transfer Denied
Dec. 18, 1978.

Martin M. Bauman, Dale, Flynn, Bauman & Liles, St. Joseph, for plaintiff-appellant.

Don Pierce, St. Joseph, for defendant-respondent.

Before SHANGLER, P. J., and SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

The parties herein were husband and wife until their marriage was dissolved by the court below on August 2, 1976. In this decree of dissolution the appellant here (Emma) was awarded custody of the infant child, Dana, born of the marriage, and the respondent (Roger) was ordered to pay $30.00 per week for Dana's support. No further action by way of appeal or otherwise occurred in the matter until, upon Roger's motion to modify this custody award, the court below entered an order on May 2, 1977 modifying the original decree, awarded the custody of Dana to Roger, and terminated the child support. After an unsuccessful motion for a new trial and for allowance of attorney fees and costs, Emma appealed. This Court is now called upon to determine the issues thus raised.

For any comprehension of the tangled and bizarre background upon which this tragic situation must be viewed, reliance must be had upon an incomplete and unsatisfactory record.

The record does not show when Emma and Roger were married nor the exact date of Dana's birth. Both agree, however, that on the date of the hearing on the motion to modify, May 2, 1977, Dana was three years old. Accordingly, on the date of the decree of dissolution of the marriage and the award of her custody to Emma, August 2, 1976, she was approximately two years old. At the time of both the decree of dissolution and the order of modification, Roger was a resident of Provo, Utah, having separated from Emma and moved there in approximately May 1976, while Emma continued to reside in St. Joseph, Missouri.

The incident which gave rise to the present proceedings occurred on February 19, 1976. At that time, Emma and Roger were living in St. Joseph as a family with their daughter Dana and two children born to Emma by a former marriage, Naomi and Terry, then 8 and 6 years of age. Roger was employed as an over-the-road truck driver and Emma worked for the Olympia Lanes Bowling Alley (Olympia) in St. Joseph. On February 19, 1976, Emma was not on duty, but in the evening she put on a jacket of Roger's and went to Olympia. There, she was asked several times by a man whom she had seen there a number of times and was known to her as "Pete", if she "had anything". She responded that she did not. Later, she reached in her husband's pocket and found five white pills which her husband referred to as "white crosses" and which he took "all the time" in connection with his truck driving, and gave

them to the man she knew as "Pete". Pete was an undercover law enforcement officer, further identified as named "Lipp", but who does not appear further in any of the facets of this case. Emma testified that the pills were not hers but belonged to her husband, she did not know where he got them, and that she did not take them or other drugs. In the modification hearing, Roger denied that the pills were his. The "white crosses" were amphetamines, a Schedule II controlled substance.

Among the many inexplicable facts and procedures apparent in this record is that, while this incident occurred in February 1976, Emma was not arrested or confined to jail until January 3, 1977, two weeks prior to her guilty plea and just short of a year after the commission of the offense. During this time, she remained in St. Joseph and was employed at the State Hospital. Her arrest, guilty plea and sentence were after the decree of dissolution and the award of custody of Dana.

On January 17, 1977, Emma pleaded guilty to the felony with which she was charged, i. e. delivery of a controlled substance, which carried a penalty of five years to life imprisonment under the facts as above set forth. The prosecutor stated that the only previous offenses with which she had been charged were two traffic tickets, and he recommended suspension of imposition of any sentence. The court sentenced her on March 22, 1977 to sixty (60) days in jail, under a work permit, and placed her on probation for five (5) years. At the time of the hearing on the motion to modify, May 2, 1977, she was serving her jail time in the Buchanan County jail. (The beginning of this service was delayed by the necessity of surgery, which was apparently successful. When she was actually confined in jail does not appear). During her confinement in jail, Emma made arrangements to have her three children cared for in the Noyes Children's Home, their grandmother (her mother) being physically unable to take full care of them.

At the completion of the evidentiary hearing on the motion to modify, the court below stated its reasons for the order of modification, as follows:

"THE COURT: * * * In view of the crime (of, sic) which Mrs. Johnston was convicted, the nature of the crime as demonstrated by the sentence of Judge Connett, and also the uncertainty as to the child's future because of her five years on probation, I am going to modify the decree and grant custody of the child to the respondent."

The order of modification transferred the custody to Roger and further provided that he be permitted "to remove the minor child to Provo, Utah".

Emma's Motions for a New Trial and for Attorney's Fees and Costs were heard by the court below on May 27, 1977 and overruled. Although requested by counsel for Emma to have such proceedings taken down by the court reporter as part of the record, this was not done and, therefore, such record is not before this Court.

However, counsel filed his Affidavit to Supplement the Record which was in no way challenged and which became a part of the approved transcript herein, which states that after he made this request for recordation of the proceedings, the trial court refused such request, stating that such procedure would be a waste of the reporter's time, and, excused the reporter from the courtroom. At the conclusion of the presentation of such motions, the court overruled the same, and a timely Notice of Appeal was filed on June 3, 1977.

In the face of the ruling denying attorney fees and costs made on May 27, 1977, the court below on July 13, 1977 ordered that Emma be permitted to pursue this appeal in *forma pauperis*, because she "is without sufficient funds to pay for said transcript and the costs of appeal". It should also be here noted that the court *sua sponte* on June 14, 1977, after the Notice of Appeal had been filed, amended the Order of May 27, 1977 relating to allowance of attorney fees and costs by holding this motion "in abeyance for further consideration by the Court upon the filing of briefs in the Missouri Court of Appeals, Kansas City Dis-

trict". Further, under date of July 13, 1977, the Court ordered that Emma be permitted to retain custody of Dana during the pendency of this appeal, under a $500.00 supersedeas bond.

Aside from this procedural maze, the following facts, basic to the decision of the appeal, may be gleaned from the record:

Emma was 32 years of age at the time of the occurrences above related; in good health (except for the surgery required following her guilty plea); gainfully employed and desirous of keeping her three children together as a family unit. The three children under her care apparently acted as siblings and nothing appears that would indicate it would be to Dana's best interests that she be separated from her stepbrother and sister. Further details of the living conditions of Emma and the children are lacking in this record.

Roger, as stated above, is an over-the-road truck driver. He left St. Joseph and Emma and Dana and moved to Utah in about May of 1976. He made no appearance in the subsequent dissolution suit brought by Emma and made no attempt to secure custody of Dana until April of 1977, when he filed his motion to modify the decree. He testified that his average annual earnings were about $20,000.00 but he was unable to state how much he had contributed toward Dana's support before the decree of dissolution and after he moved to Utah. He stated that he was paying child support for a child born of a previous marriage and just sent Emma the same amount by check. He had left the checks and all supporting records in Utah. Emma, however, stated that she had received from Roger $225.00 as support for Dana in 1976, and $175.00 in 1977, of which latter amount $100.00 was sent to her a week before the hearing on the motion to modify. It was apparently necessary for her to secure Aid for Dependent Children, which the authorities approved after the usual investigation.

Roger lived with his bride of one month in a two-room apartment in Provo, Utah but intended to get a larger place, if he was awarded custody of Dana.

Since the final separation, he had visited Dana three or four times for about a day on each occasion. He stated that Emma took good care of her children; that Dana was always clean, dressed properly and healthy in appearance when he visited her. He testified that his sole reason for asking for the custody of Dana was the conviction of Emma, as above related.

Holley Beth Johnston, Roger's wife at the time of the hearing, testified that she was 20 years of age; they had been married one month; and, she was employed in a sewing factory from 8:00 a. m. to 4:00 p. m. She stated that she had never seen Dana, but was willing to quit her job and take care of her. She testified that Roger had sent funds for Dana's support but had no knowledge of the dates or amounts of such payments.

The record is completely devoid of any other facts as to the living conditions, environment or life-style of Roger and Holley.

The appellant, Emma, raises seven assignments of error on this appeal. These will not be dealt with in the order briefed for reasons which will become obvious in the course of this discussion.

Point VII raised by appellant asserts error in the Court's refusal of appellant's request that the proceedings in court on the motions for a new trial and for attorney fees and costs be taken and preserved by the official court reporter. The only record of such refusal or other proceedings upon that occasion is the "Affidavit to Supplement Record", which affidavit stands uncontradicted as a part of the approved transcript, which clearly and unequivocally sets forth counsel's request and the Court's refusal, but is silent as to the unrecorded proceedings directly relating to the motions thereafter.

■ Of course, this Court cannot consider matters not preserved on the record and contained in an approved transcript. *State v. Hatten*, 561 S.W.2d 706, 713 [9] (Mo.App.1978); § 512.110 RSMo 1969; Rule 81.12. The responsibility to provide a meaningful transcript for review devolves

upon the appellant. *Davis v. Long*, 521 S.W.2d 7 [3] (Mo.App.1975). It is, of course, impossible for an appellant to supply a transcript of a record that the Court would not permit to be made.

■ While the official court reporter at the trial level serves under the direction of the judge, § 485.040, § 485.050 RSMo 1969, the mandate of the statutes is clear that at the direction (or request) of either party, the proceedings at the trial level should be recorded, preserved and included in the transcript on appeal where necessary to present a claim of trial error. Rule 81.12. The making of such a record, if requested, is not a matter for judicial discretion and the denial of a request to record proceedings because it would waste the reporter's time constitutes an abuse of discretion. Such a denial effectively and completely forecloses appellant's right to meaningful appellate review.

■ Respondent in his brief argues that this error is cured by the trial court's amendment of its order relating to attorney's fees and costs purporting to hold these matters "in abeyance for further consideration by the Court upon the filing of briefs" on appeal. When this amendment was entered, the post trial motions had been overruled and the Notice of Appeal had been filed. The court below had no jurisdiction to make the order. Further, it is difficult to arrive at any conclusion as to just what the order means. The filing of briefs in this Court could not breathe jurisdictional life into the court's action. If the order meant that the trial court intended to withhold its ruling on attorney fees and costs until after this appeal is decided, such an order would constitute error, as was held in *Larison v. Larison*, 537 S.W.2d 438, 439 [1] (Mo.App.1976). In any event, the court's order of June 14, 1977 did not correct the basic error inherent in the refusal to record and preserve the record on this facet of the case.

■ For her Point VI, appellant charges the court with an abuse of discretion in refusing to allow her attorney fees and costs. When application for such allowances are made, the discretion of the court is invoked, § 452.355 RSMo, 1973 Supp. This statute further limits the application of such discretion to a time "after considering all relevant factors including the financial resources of both parties * * * " Such an award is to be made to a petitioning wife (or mother, as here) upon a showing of her inability to prosecute or defend the action on her own, *L.J.S. v. V.H.S.*, 514 S.W.2d 1, 9 [15] (Mo.App.1974), and a showing of the ability of the husband (or father, as here) to pay, *S.G.E. v. R.L.J.*, 527 S.W.2d 698, 703 [6] (Mo.App.1975). As previously stated, this Court is without any record taken at the hearing on Emma's application in this area. However, the record which has been preserved, though lacking in desirable detail, demonstrates Emma's lack of financial resources. This conclusion is vitally bolstered by the trial court's order permitting her to pursue this appeal in *forma pauperis.* Conversely, Roger's testimony that his income was approximately $20,000.00 a year would indicate strong evidence of his ability to pay reasonable attorney fees and the costs, of a proceeding which he instituted. Other relevant evidence or factors considered by the trial court on this facet of the case are unknown to this Court, but upon the record presented (which can be the only basis for appellate review) an absence of the exercise of proper judicial discretion in ruling Emma's application is evident and would require a mandate of reversal and remand.

■ However, this review does not end there. In Point V, appellant alleges error in the failure of the trial court, in its order changing the custody of Dana and permitting Roger to take her to Utah, to grant her reasonable visitation rights. While it is true that when such an order is silent on visitation rights, a natural parent's right to reasonable access to her child remains unimpaired, *Middleton v. Tozer*, 259 S.W.2d 80, 85 [4] (Mo.App.1953), this rule has no practical application to the case at bar. Here, if the court's custodial order becomes operative, Dana will be in Roger's custody in Utah and thus in truth inaccessi-

ble for visitation by her mother, one declared by the trial court to be without funds to prosecute her appeal. The realistic effect of such an order would be to remove the mother's right to ever see her daughter in the foreseeable future. Such a harsh result would only be tolerated upon a judicial finding that visitation would endanger the child's physical health or impair her emotional development. § 452.400 RSMo, 1973 Supp.; *Rogers v. Rogers*, 430 S.W.2d 305, 311 [8] (Mo.App.1968); *Adoption of E. N. v. E. M. N.*, 559 S.W.2d 543, 545 [5] (Mo.App.1977). Judicial silence cannot be made a valid substitute for such required judicial finding. Appellant's Point V is well taken.

█ The appellant's first assignment of error (I) raised the court's refusal to grant additional time in which to confer with her counsel in defense of the motion to modify and to prepare appropriate motions in the matter and to prepare her defense through discovery and investigatory procedures. The record shows that counsel for appellant made an oral request of the court for time for these purposes upon the basis that he had not had sufficient time to do so because his client, Emma, was serving her jail sentence and her necessary cooperation was not available to him. He stated that Emma was agreeable, if such additional time was granted, that the court enter a temporary custody order pending a later full hearing. This request was denied. There can be no doubt that the discovery proceedings authorized by Rules 56 and 57 are ordinarily available to the parties in proceedings to modify a divorce (or dissolution) decree pertaining to custody and support. *State ex rel. Hoffman v. Campbell*, 428 S.W.2d 904 (Mo.App.1968). However, this assignment of error need not presently be further discussed, in view of the decision here reached on this appeal.

Appellant Emma's remaining assignments of error may be dealt with together since each of them strikes directly at the propriety of the ultimate judgment granting the change of custody of the three year old child from her natural mother to the father, for residence in Utah. These points are that the court erred in not considering respondent Roger's prior conduct (II); in not ordering a full investigation and report, as provided in § 452.390 RSMo, 1973 Supp., with regard to the proposed custodial arrangements for Dana, before ordering her custody changed (III); and, removing the child of such tender age from the custody of her mother without any clear showing that past and continued custody by the mother has been or will likely be detrimental to the child (IV).

█ Generally, appellate review of child custody matters will not result in a reversal of the trial court's judgment unless the judgment is not supported by substantial evidence or the record clearly demonstrates an abuse of discretion or the appellate court has a firm belief that the welfare of the child requires some other disposition. *In re Marriage of L_____ M_____*, 541 S.W.2d 760, 761 [2] (Mo.App.1976); *In re Marriage of L_____*, 548 S.W.2d 262, 263 [3] (Mo. App.1977). These restrictions on the scope of review have been recently given clear delineation in *Murphy v. Carron*, 536 S.W.2d 30, 32 [1] (Mo. banc 1976). In *Murphy*, the court further extended the scope of such review to include a reversal if the appellate court finds that the judgment is against the weight of the evidence, but adds a *caveat* that such appellate power should only be exercised if accompanied by a "firm belief that the decree or judgment is wrong."

█ The compelling and overriding (and indeed, only) concern of the courts at all levels must be the welfare of the child. The thrust of the points raised by the appellant here and her supporting arguments is that the court below exercised its judicial discretion in a summary and punitive manner because of Emma's conviction and sentence as above described. The law is clear that custody proceedings may not be used to reward or punish a parent, *V.M. v. L.M.*, 526 S.W.2d 947, 949 [4] (Mo.App.1975); *L_____ v. N_____*, 326 S.W.2d 751, 754 [4] (Mo.App.1959). Indeed, the trial court's denial of appellant's request that a record be

made of the proceedings on her motion for a new trial and for attorney fees and costs, and its refusal to allow same and its denial of any visitation rights to the mother demonstrate a punitive pattern from which the ruling on the custody of Dana cannot escape blemish.

Particularly is this true in the light of Emma's previous clean record, her work record and the fact, admitted by Roger, that she took good care of Dana and her other children. The reason (other than the conviction and sentence) stated by the court that Emma would be under a five-year probation, is not convincing, since it is necessarily predicated upon the speculation that she would violate that probation. If such violation occurred, the trial court had continuing jurisdiction to take whatever steps were necessary as to Dana's custody and welfare, as the then situation warranted.

Further, the record is convincing that the father, Roger, abandoned Emma and Dana in May of 1976; made no appearance nor any effort to gain custody of Dana in the dissolution of marriage proceedings; was not interested enough to find out the court's award for child support; and, had not, in fact, made any substantial contributions to her support since he moved to Utah.

The record also is silent as to the environment into which the court delivered Dana by its judgment, except as to Roger's earnings as an over-the-road truck driver, his intention to acquire larger living quarters, and the fact that his 20-year old bride of one month, who had never seen his daughter, was "willing to take care of her".

The entire proceedings below were conducted in so summary a fashion as to cause a firm belief that it was fundamentally unfair to appellant, lacking in the careful consideration for the welfare of the child, and the judgment was not supported by competent, substantial evidence that her best interests would be served by the change of custody.

The judgment below in its entirety is reversed and the cause remanded for re-trial. It is further ordered that the appellant be allowed reasonable attorney's fees and expenses for past and future proceedings herein, including this appeal, to be set by the Circuit Court of Buchanan County, Missouri; that appellant's supersedeas bond be discharged and that the court costs on this appeal are assessed against the respondent.

All concur.