**Garrett D. BUDZINSKI, Respondent,**

v.

**Deborah L. BUDZINSKI, Appellant.**

**No. WD 32633.**

Missouri Court of Appeals,
Western District.

April 20, 1982.

Thomas R. Bellmann, Kansas City, for appellant.

Gary L. Allen, Kansas City, for respondent.

Before SOMERVILLE, C. J., Presiding and WASSERSTROM and LOWENSTEIN, JJ.

SOMERVILLE, Chief Judge.

The wife has appealed from a final decree in a dissolution of marriage proceeding. The marriage was consummated on May 10, 1975; and dissolved on February 17, 1981. The wife was awarded custody of the child born of the marriage and the husband was ordered to pay $325.00 per month child support, neither of which is questioned on appeal. The wife does, however, question the decretal provisions touching the division of marital property, refusal to award "periodic" maintenance, and the amount of attorney fees awarded.

■ This appeal epitomizes a continuing reluctance on the part of many to face the fact that dissolution of marriage decrees are not reviewable de novo on appeal. To the contrary, they are reviewable under the guidelines forged in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which is to say they will not be disturbed on appeal unless they lack substantial evidence to support them, unless they are against the weight of the evidence, or unless they erroneously declare or apply the law.

The principal asset of marital property was the family residence which had a net value of approximately $18,000 ($54,000 less encumbrance of $35,677.46). The decree ordered the family residence sold and the net proceeds divided equally between the husband and wife. In addition, the wife was awarded household furnishings and appliances valued at $3,000.00 and a 1977 Chevrolet Camaro valued at $4,000.00. The husband was awarded a 1979 Jeep valued at $5,000.00, 4 Series E Savings Bonds having a face value of $400.00, and an assortment of odds and ends of household furnishings and personal items, much of which was his separate property. In addition, the husband was ordered to pay and save the wife harmless from unpaid debts incurred during the marriage in the approximate amount of $12,139.01. Thus, the wife's share of marital property was free of any marital debts.

■ The wife's principal complaint about the division of marital property is that it compelled her, until the family residence was sold, "to maintain 100% of the payments" on the note secured by deed of trust on the property "to protect 50% of the equity". The record on appeal has been searched in vain for evidence to support this argument. Finding none, the wife's argument is rejected on the ground that it is purportedly posited on facts de hors the record. *Johnston v. Johnston*, 573 S.W.2d 406, 410 (Mo.App.1978).

■ The wife also takes issue with the validity of a $4,000.00 debt purportedly owed to the husband's father which was included in the indebtedness which the husband was ordered to pay and save the wife

harmless from. The validity of the indebtedness was never questioned below by the wife and surfaces for the first time on appeal. The wife seizes upon it on appeal as indicative of an unfair and unjust division of marital property. According to the wife, the $4,000.00 indebtedness of questionable validity unfairly decreased her share of the net proceeds to be received from sale of the family residence and, conversely, unfairly swelled the husband's proportionate share, thereby resulting in an unfair division of marital property. The wife's convoluted argument is admittedly difficult to follow. Even if the $4,000.00 indebtedness is discounted in full, the husband was still burdened with approximately $8,000.00 in debts incurred during the marriage which, according to his testimony, could only be discharged by selling the family residence.

■ The wife also complains that the trial court refused to give adequate weight to misconduct (Section 452.330.1(4), RSMo 1978) on the part of the husband in arriving at its division of marital property. The husband admitted that during the marriage "he went out with one woman". There was no suggestion that it was an adulterous event, and it appears the trial court considered it insignificant and considerably short of marital misconduct of such moment as to materially affect the division of marital property.

■ By statutory command (Section 452.330, RSMo 1978), a trial court is required to make a "just" division of the marital property taking into consideration all "relevant factors" including those specifically delineated in said statute. The keystone is a "just" division which entails an exercise of discretion rather than blind resort to an abstract mathematical formula. The terms "proper" and "abuse", commonly relied upon for measuring exercises of discretion, are so polarized that an elusive task is invariably presented. Striking a proper balance between the equities in each case to achieve the statutory command of a "just" division of marital property is the primary

responsibility of the trial court. Appellate courts should studiously refrain from second-guessing performance of this important judicial function by the trial courts, and interfere only when convinced there has been an abuse of discretion. *Nilges v. Nilges*, 610 S.W.2d 58, 60 (Mo.App.1980). This court is not convinced that the division of marital property at hand bespeaks of an abuse of discretion, and, in the exercise of proper judicial restraint, will not interfere with the division made by the trial court.

■■ The wife also charges that the trial court erred in not awarding her "periodic" maintenance. Granting or refusing maintenance is a matter of judicial discretion and, in either case, will not be disturbed on appeal unless an abuse of discretion is shown. *Royal v. Royal*, 617 S.W.2d 615, 619 (Mo.App.1981). By statute, Section 452.335.1(1)(2), RSMo 1978, a trial court "may" grant maintenance to either spouse, "but only if it finds that the spouse seeking maintenance (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances makes it appropriate that the custodian not be required to seek employment outside the home." When the aforementioned statutory criteria are juxtaposed with the evidence presented to the trial court, the following facts become predominant. The wife is 29 years of age, in good health and a trained beautician and experienced waitress. At the time of trial she was working part time as a waitress and earning approximately $300.00 a month. Her parents look after the child while she is working. After sale of the family residence she will receive approximately $9,000.00, in addition to household goods and appliances valued at $3,000.00 and a 1977 Chevrolet Camaro valued at $4,000.00. Not to be overlooked is the signal fact that the property which the wife leaves the marriage with is free of all indebtedness, as the husband was burdened with the exclusive responsibility of paying all debts incurred during the marriage. The husband, 31 years of age, is a railroader with a net income of approximately $2,000.00 per month. According to his testimony, which stood uncontroverted, he entertained considerable concern about his "job security". There was a dearth of evidence as to the life-style to which the wife had become accustomed, and it may be empirically noted that family income, standing alone, is an imprecise measure of the life-style enjoyed by a family as a modest income for some offers a higher life-style than a handsome income does for others. One of the most revolutionary policy changes effected by the Dissolution of Marriage Act was to encourage rather than inhibit individual self-sufficiency of the respective spouses following dissolution of their marriage. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 858 (Mo.App.1977). Everything considered, this court is constrained to conclude that the trial court neither abused its discretion nor did violence to Section 452.335, RSMo 1978, when it refused to grant the wife "periodic" maintenance. Parenthetically, the trial court equated burdening the husband with the marital debts as an added determinative factor in concluding that the wife was not entitled to an award of periodic maintenance.

■ The award of $500.00 to the wife for attorney fees is the last source of contention on appeal by reason of the fact the amount fell short of the $1,770.00 billed by the wife's attorney. Awarding attorney fees falls within the discretionary realm of the trial court, Section 452.355, RSMo 1978, and *Matheus v. Matheus*, 612 S.W.2d 907, 908 (Mo.App.1981), and is reviewable on appeal only for abuse, *McKenna v. McKenna*, 607 S.W.2d 464, 466 (Mo.App.1980). The scope of appellate review laid down in *Murphy v. Carron, supra*, in conjunction with the following dimension carved out in *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979), controls: "However, § 452.355 does make clear that the financial resources of the parties must be considered. Other factors are to be taken into account as well. How they balance will vary from case to case and certainty of result cannot be

projected. Only when the trial court is shown to have abused the broad discretion with which it is vested in this regard should its award (or orders) be overturned." When the amount awarded for attorney fees is questioned on appeal on grounds of inadequacy, the expertise of the trial judge, by reason of his unique position and familiarity with the issues, is entitled to considerable weight, and the fact that the trial court awards less than the amount billed by counsel is not ipso facto indicative of an abuse of discretion. *Cissell v. Cissell*, 573 S.W.2d 722, 725 (Mo.App.1978). The applicable law anent the record on appeal in this case allays any inclination to disturb the amount awarded the wife for attorney fees.

In summary, the issues on appeal do not turn on what this court might or might not have decreed if it had heard and tried the case originally. The triumvirate of issues raised by the wife are not reviewable de novo but in accordance with the guidelines laid down in *Murphy v. Carron, supra*.

Judgment affirmed.

All concur.