Cassandra L. NELSON, Respondent,

v.

Michael A. NELSON, Appellant.

No. WD 57071.

Missouri Court of Appeals,
Western District.

March 14, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 2000.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Philip F. Cardarella, Kansas City, for appellant.

H. George Lafferty, Jr., Kansas City, for respondent.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Michael A. Nelson appeals the judgment of the Jackson County Circuit Court dissolving his marriage to the respondent, Cassandra L. Nelson, with respect to its division of the parties' marital property and award of child support.

The appellant raises four points on appeal. In both Points I and II, he claims that the trial court erred in not awarding the parties an equal share of the marital property. Specifically, in Point I, he claims that the evidence was insufficient to support an unequal division of marital property, and in Point II, he claims that such an award, based on his marital misconduct, was punitive in nature, in violation of § 452.330,[1] and was contrary to the requirements of Missouri Constitution Article 22(a) and in conflict with his rights guaranteed to him by the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. In Point III, the appellant claims that the trial court erred in awarding child support for one child of $456 per month as being the presumed correct child support amount (PCCSA) because, in calculating this amount pursuant to Civil Procedure Form No. 14, as required, it included $551 in "additional child rearing costs," which

amount was not supported by the evidence. In Point IV, he claims that the trial court erred in awarding the respondent retroactive child support for two children in the PCCSA of $574 per month because, as claimed in Point III, this amount was not supported by the evidence.

We affirm in part and reverse and remand in part.

## Facts

The parties were married on April 12, 1974. There were two children born of the parties' marriage, Michael A. Nelson II, born February 11, 1979, and Michaela A. Nelson, born August 31, 1987.

On February 17, 1994, the parties separated, and the respondent filed her petition for dissolution of marriage on January 21, 1997, alleging that the marriage was irretrievably broken. In her petition, the respondent requested the court to, *inter alia,* dissolve the marriage; award her custody of the two children, child support and maintenance; and divide the property. On April 22, 1997, the appellant filed his answer and cross-petition for dissolution, requesting the court to, *inter alia,* dissolve the marriage, grant him joint custody of the children, and divide the property. The respondent filed her answer to the appellant's cross-petition on May 9, 1997.

The trial court heard the case on May 13, 1998, and issued its judgment on December 4, 1998, *inter alia,* dissolving the marriage; awarding joint legal and physical custody of the minor children to the parties; awarding child support to the respondent of $574 per month for the two children, including retroactive support of $7,980; ordering both parties to maintain health, dental and vision insurance for the children; awarding maintenance; and dividing the property. The court also ordered the appellant to pay "education expenses" for secondary school, including payments for "musical training and les-

---

1. All statutory references are to RSMo Supp. 1998, unless otherwise indicated.

sons, school programs and sports activities," and for college expenses.

On December 30, 1998, the appellant filed his "Motion for New Trial or, Alternatively, to Amend Judgment," in which he alleged that the child support award was in error in that, *inter alia,* Michael, who had recently celebrated his nineteenth birthday and was not a full-time student at an institution of higher learning, was now emancipated. He also alleged that the court's unequal division of marital property was in error because it was not supported by the evidence.

On March 4, 1999, a hearing was held on the appellant's motion for new trial or to amend judgment. The trial court denied the appellant's motion for new trial, but sustained his motion to amend with respect to the alleged emancipation of Michael and its effect on its prospective award of child support. The provisions of the amended judgment were in most respects identical to those in the initial judgment, except with respect to the custody and child support provisions concerning Michael, who the court found was emancipated as of October 23, 1998. As such, the child support award of $574 per month for two children was ordered amended to $456 per month for Michaela, starting December 1, 1998. Retroactive child support was found owing to the respondent in the amount of $12,510 for February 1, 1997, through November 30, 1998, which was reduced to $4,197 after credits for past payments in the amount of $4,813 and setting off the amount ordered paid to the appellant to equalize the court's property division. Unlike the initial judgment, the amended judgment had no separate provision for payment of "education expenses" for the children by the appellant.

This appeal follows.

**2.** Section 452.330.1 provides:
In a proceeding for dissolution of the marriage ... the court shall set apart to each spouse such spouse's nonmarital property

## I.

In Point I, the appellant claims that the trial court erred in not awarding the parties an equal share of the marital property. Specifically, he claims that the evidence was insufficient to support an award of 70 percent of the marital property to the respondent, contending that there is a presumption favoring an equal division, which was not rebutted. We disagree.

Our review of provisions in a divorce decree as to the division of marital property is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. *banc* 1976). *Medlock v. Medlock,* 990 S.W.2d 186, 189 (Mo.App. 1999). We will affirm the decision of the trial court, unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Crews v. Crews,* 949 S.W.2d 659, 663 (Mo.App.1997) (*citing Allen v. Allen,* 927 S.W.2d 881, 885 (Mo.App.1996)). "The burden of demonstrating error is on the party challenging the divorce decree." *Id.*

An appellate court will only interfere with a trial court's division of property if the division "is so 'heavily and unduly weighted in favor of one party as to amount to an abuse of discretion.'" *Gendron v. Gendron,* 996 S.W.2d 668, 670 (Mo. App.1999) (*quoting Crews,* 949 S.W.2d at 663); *Medlock,* 990 S.W.2d at 189. "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Medlock,* 990 S.W.2d at 189. If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion. *Id.*

Section 452.330,[2] which governs the division of property in a dissolution

and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

proceeding, mandates a two-step process to be followed by the trial court: (1) the court must first set aside to each spouse his or her non-marital property; and (2) then divide the marital property. *Eck v. Eck,* 904 S.W.2d 60, 61 (Mo.App.1995) (*citing Steele v. Steele,* 844 S.W.2d 104, 104 (Mo.App.1992)). The trial court is vested with great flexibility and discretion in its division of property pursuant to § 452.330. *Klockow v. Klockow,* 979 S.W.2d 482, 487 (Mo.App.1998). We presume that the trial court's division of property is correct, and the party opposing the division bears the burden of overcoming this presumption. *Gendron,* 996 S.W.2d at 673.

 When dividing marital property, the trial court is required to consider all relevant factors, including: (1) the economic circumstances of each spouse at the time of the property division and the desirability of awarding the family home to the custodial parent; (2) the contribution of each spouse to the acquisition of property; (3) the value of each spouse's non-marital property; (4) the conduct of the parties during the marriage; and (5) the custodial arrangements for the minor children. § 452.330.1. These statutory factors are not exclusive, *Baker v. Baker,* 986 S.W.2d 950, 957 (Mo.App.1999), and "there is no formula respecting the weight to be given the relevant factors which a court may consider." *Medlock,* 990 S.W.2d at 190. In dividing marital property, the trial court must follow the two guiding principals of § 452.330: "(1) that property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) that property division should be utilized as a means of providing future support for an economically depend[e]nt

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
(2) The contribution of each spouse to the acquisition of the marital property, includ-

spouse." *Griffin v. Griffin,* 986 S.W.2d 534, 536 (Mo.App.1999).

 The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case. *Finnical v. Finnical,* 992 S.W.2d 337, 343 (Mo.App.1999); *Gendron,* 996 S.W.2d at 673. "That one party is awarded a higher percentage of marital assets does not *per se* constitute an abuse of the trial court's discretion." *Klockow,* 979 S.W.2d at 487. In fact, this court routinely affirms highly disproportionate divisions of marital property. *Griffin,* 986 S.W.2d at 536; *see also Jennings v. Jennings,* 910 S.W.2d 760, 765–67 (Mo.App. 1995) (approving an award of 86 percent of the marital property to the husband); *May v. May,* 801 S.W.2d 728, 734 (Mo. App.1990) (holding that "[a] seventy-five percent award of marital assets to the wife is not a *per se* abuse of discretion"); *In re Marriage of W.E.F. v. C.J.F.,* 793 S.W.2d 446, 452 (Mo.App.1990) (approving an award to the husband of 72 percent of the marital property); *Langdon v. Langdon,* 792 S.W.2d 645, 647–49 (Mo.App.1990) (approving an award to the wife of 80 percent of the marital property); *Hayes v. Hayes,* 792 S.W.2d 428, 429, 431–32 (Mo.App.1990) (approving an award to the wife of 74 percent of the marital property); *Buchheit v. Buchheit,* 768 S.W.2d 641, 642–43 (Mo. App.1989) (approving an award to the wife of 75 percent of the marital property); *Mika v. Mika,* 728 S.W.2d 280, 283–84 (Mo.App.1987) (approving the award of 84 percent of the marital property to the wife).

 We find no authority to support the appellant's assertion that, under § 452.330.1, there is a presumption that an

ing the contribution of a spouse as home-maker;
(3) The value of the nonmarital property set apart to each spouse;
(4) The conduct of the parties during the marriage; and
(5) Custodial arrangements for minor children.

unequal division of marital property is suspect. In fact, the authority is to the contrary. *See Bruske v. Bruske,* 656 S.W.2d 288, 295 (Mo.App.1983) (*citing Budzinski v. Budzinski,* 632 S.W.2d 527, 529–30 (Mo. App.1982)) (holding that "there is no mathematical formula which prevails in division of marital property, let alone a presumption that any apportionment less than an equal division is suspect"). We do, however, accept the general proposition that the "division of marital property should be substantially equal unless one or more statutory or non-statutory facts causes such a division to be unjust." *Hubbs v. Hubbs,* 870 S.W.2d 901, 908 (Mo.App.1994). Thus, the issue here is whether the evidence was sufficient to support the unequal division of the parties' marital property as being fair and equitable. *Gendron,* 996 S.W.2d at 673; *Finnical,* 992 S.W.2d at 343.

 In evaluating the sufficiency of the evidence to support the trial court's division of marital property, we defer to its "determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences." *Gerhard v. Gerhard,* 985 S.W.2d 927, 930 (Mo.App.1999). "The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, and the court may disbelieve testimony even when uncontradicted." *Id.* We presume that the trial court considered all the evidence when it divided the marital property, *Baker,* 986 S.W.2d at 957, and that it believed the testimony and evidence consistent with its judgment. *Patton v. Patton,* 973 S.W.2d 139, 146 (Mo.App. 1998). "As long as the record contains credible evidence upon which the trial court could have formulated its beliefs, this court will not substitute its judgment for that of the trial court." *Id.* at 145.

A careful review of the record indicates that there was sufficient evidence to support a disproportionate division of the marital property to the respondent, based on the factors found in § 452.330.1. Three of the five statutory factors are implicated here as being significant, § 452.330.1(1), (2), and (4). As to the first factor, § 452.330.1(1), which provides that in dividing property the court is to take into consideration the economic circumstances of the parties, "including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children," it would favor an award of the marital residence to the respondent in that, pursuant to the court's decree, Michaela would be residing with the mother for the majority of the time.

The second factor, found in § 452.330.1(2), provides that the trial court, in dividing marital property, must consider the "contribution of each spouse to the acquisition of the marital property." As to this factor, although the record is unclear as to the contribution of each party with respect to all the marital property, it is clear that, during the marriage, the respondent made the majority of the mortgage payments on the marital residence, the equity in which constituted the lion's share of the marital property, approximately 65.8%. This then would have weighed in favor of a 70–30 split to the respondent.

Finally, as to the fourth factor of the statute, § 452.330.1(4), which provides that the trial court is to consider the "conduct of the parties during the marriage," there is evidence from which the trial court could have found that the appellant was having an affair during the marriage. Of course, there is also evidence that the respondent was romantically involved with another while separated from the appellant; however, the trial court was free to weigh her conduct against the conduct of the appellant and give it whatever weight it believed was reasonable.

For the reasons discussed, we find nothing in the record that indicates that the trial court abused its discretion in award-

ing a disproportionate share of the marital property to the respondent.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in awarding the respondent more than 70 percent of the marital property due to his marital misconduct because such an award was punitive in nature, in violation of § 452.330, and was contrary to the requirements of Missouri Constitution Article 22(a) and in conflict with his constitutional rights guaranteed by the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. Specifically, the appellant contends that: (1) "[Section] 452.330 does not authorize the division of property in a dissolution proceeding to punish a party for lawful (if undesirable) behavior"; and (2) because there is no provision for a jury trial in a dissolution proceeding, due process requires that only his conduct in acquiring the marital property could be considered in dividing it. Because this issue concerns the division of marital property, as was the case in Point I, our review is the same, for an abuse of discretion, as discussed, *supra. Medlock,* 990 S.W.2d at 189.

Under § 452.330.1(4), the trial court is required to consider the parties' conduct during the marriage when dividing the marital property. *McNair v. McNair,* 987 S.W.2d 4, 6 (Mo.App.1998). Although it is not a legitimate basis for "punishing" a party when dividing marital property, "marital misconduct is a factor in property division when the offending conduct places extra burdens on the other spouse." *Id.* However, " '[i]t is only when misconduct of one spouse changes the balance so that the other must assume a greater share of the partnership load that it is appropriate that such misconduct can affect the distribution of property.' " *Id.* at 6–7 (*quoting Dodson v. Dodson,* 904 S.W.2d 3, 8 (Mo.App.1995)); *see also Halupa v. Halupa,* 943 S.W.2d 272, 277 (Mo.App.1997) (holding that the trial court properly based its marital property division on evidence of the husband's extramarital affairs and his dissipation of marital assets to pay gambling debts); *Lawrence v. Lawrence,* 938 S.W.2d 333, 338 (Mo.App.1997) (holding that, in dividing marital property, the trial court could consider the husband's adultery, which contributed to the dissolution and forced the wife to attend counseling sessions). Given this interpretation of the marital misconduct as a factor in the division of marital property, the trial court, in disproportionately dividing the marital property, based in whole or in part on marital misconduct, is not "punishing" the offending spouse, but is compensating the aggrieved spouse for the extra burden placed on the spouse and the marriage by the offending spouse's misconduct.

With respect to the appellant's marital misconduct, the record reflects that he moved out of the marital residence and in with his girlfriend on the same day. In this respect, the respondent testified that he told her he was leaving to move in with his girlfriend. From this, the trial court could have reasonably inferred that there was misconduct by the appellant during the marriage, which contributed to the breakup of the marriage. In any event, the appellant does not carry his burden of rebutting the presumption that the trial court's division was correct as to other relevant factors. *Gendron,* 996 S.W.2d at 673. This is so in that the appellant does not point to anything in the record that rebuts the presumption that the trial court followed the law in dividing the marital property. *Hubbs,* 870 S.W.2d at 907.

In this point, the appellant also contends that the consideration of marital misconduct in the distribution of marital property punishes him for exercising his constitutional rights to freedom of religion under the First Amendment, freedom from state interference with "private, lawful sexual behavior of citizens" under the

Ninth Amendment, and equal protection under the Fourteenth Amendment. He further contends, that even if his conduct was not constitutionally protected, due process required that he could not be deprived of his property on this basis without a jury trial and, thus, because a jury trial was not permitted in a dissolution proceeding, the marital conduct factor had to be limited to conduct dealing with the acquisition of the property.

Although the appellant cites generally to the Missouri and United States Constitutions in support of his contentions, he does not provide us with any specific case citations to support his claims raised in this point or explain the absence thereof. Under Rule 84.04,[3] we are not required to review a claim on appeal if it appears without citation of applicable or relevant authority. *Coleman v. Gilyard*, 969 S.W.2d 271, 274 (Mo.App.1998). "[I]f no authority exists, the appellant is required to include an explanation for the absence of citation." *Id.* In addition, even if some basis existed for the appellant's constitutional claims, he must have raised them at the earliest time possible. " 'Constitutional issues are waived unless raised at the earliest possible opportunity consistent with orderly procedure.' " *Weiss v. Rojanasathit*, 975 S.W.2d 113, 121 (Mo. banc 1998) (*quoting Hollis v. Blevins*, 926 S.W.2d 683, 683 (Mo. banc 1996)). As such, because the appellant failed to raise his constitutional concerns with the trial court at any time, we will not address them here.

Point denied.

### III.

In Point III, the appellant claims that the trial court erred in awarding child support for one child of $456 per month, as being the PCCSA, because, in calculating this amount pursuant to Civil Procedure Form No. 14, as required, it included $551 in "additional child rearing costs," which amount was not supported by the evidence.

As with the provisions of a divorce decree concerning the division of marital property, discussed, *supra*, we will uphold the trial court's award of child support unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Halupa v. Halupa*, 980 S.W.2d 325, 328 (Mo.App.1998). An appellate court will interfere with the trial court's award of child support if the trial court abused its discretion by ordering an amount that is "against the logic of the circumstances" or "arbitrary or unreasonable." *Gerhard*, 985 S.W.2d at 930. "The trial court's award of child support will not be disturbed on appeal 'unless the evidence is "palpably insufficient" to support it.' " *Id.* (*quoting Allen v. Allen*, 961 S.W.2d 891, 893 (Mo.App.1998)).

In determining child support, § 452.340.7 and Rule 88.01 require the trial court to follow the two-step *Woolridge* procedure. *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997); *Webb v. Fox*, 978 S.W.2d 16, 20 (Mo.App.1998); *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. 1996). First, the trial court must determine and find for the record the PCCSA pursuant to a correct Form 14 calculation. *Webb*, 978 S.W.2d at 20; *Woolridge*, 915 S.W.2d at 379. "[Step one] is a mathematical calculation, the mandatory use of which ensures that the child support guidelines will be considered in every case. . . ." *Neal*, 941 S.W.2d at 504; *Woolridge*, 915 S.W.2d at 379. Second, after consideration of all relevant factors, the trial court must consider whether to rebut the PCCSA as being unjust or inappropriate. *Neal*, 941 S.W.2d at 504; *Webb*, 978 S.W.2d at 20; *Woolridge*, 915 S.W.2d at 379. "Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards." *Woolridge*, 915 S.W.2d at 379.

**3.** All rule references are to the Missouri Rules of Civil Procedure (1999).

In determining the PCCSA, as required, the trial court can either accept the PCCSA calculated by a party pursuant to Form 14 or reject the calculations of both parties and do its own Form 14 calculation. *Schleisman v. Schleisman*, 989 S.W.2d 664, 672–73 (Mo.App.1999) (*citing Woolridge*, 915 S.W.2d at 381–82). "The trial court must reject any Form 14 if any item is incorrectly included in the calculation, an amount of an item included in the calculation is incorrect, or the mathematical calculation is incorrect." *Samples v. Kouts*, 954 S.W.2d 593, 597 (Mo.App.1997) (*citing Woolridge*, 915 S.W.2d at 378). In doing its own Form 14 calculation, "[t]he trial court determines which Form 14 items and their respective amounts are properly included in the calculation based on the Directions for Completion of Form 14 and the evidence presented." *Id.; Woolridge*, 915 S.W.2d at 381. In determining whether the trial court correctly calculated the PCCSA, we review the calculation to ensure that not only it is done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence. *Samples*, 954 S.W.2d at 597; *Woolridge*, 915 S.W.2d at 380.

As to the *Woolridge* procedure, the record here reflects that the trial court, although couching its judgment in terms of "rebuttal," actually "rejected" the Form 14 calculations submitted by the parties as being incorrect because they included incorrect income amounts for the parties.[4] Having rejected the Form 14s of the parties, the trial court calculated and completed its own Form 14 for one child and for two children, finding the PCCSA for one child to be $456 per month and for two children to be $574 per month, which amounts were not rebutted as being unjust or inappropriate. Both amounts were calculated in that, at the time of the hearing on the dissolution, both children were unemancipated, requiring a child support award based on two children. However, pursuant to the trial court's grant of the appellant's motion to amend the judgment, the oldest child was ordered emancipated in the amended judgment, having dropped out of college, such that, while the retroactive child support award was for two children, the prospective award was only for one child, Michaela.

In its Form 14 calculations, the PCCSA for one child and two children, the trial court included $551 of "additional child rearing costs," as allowed pursuant to Form 14. It is this cost amount that the

---

4. We note that, in its order, the trial court stated:

20. The presumed correct child support as calculated by the [Respondent] pursuant to Section 452.340.8, Rule 88.01, and Form 14 is $1,009.89 per month, and that after consideration of all relevant factors pursuant to Section 452.340.8 and Rule 88.01 is rebutted as being unjust or inappropriate because it is based upon income figures for the parties that are contrary to the findings of the Court.

21. The presumed correct child support as calculated by the [Appellant] pursuant to Section 452.340.8, Rule 88.01, and Form 14 is $493.00 per month, and that after consideration of all relevant factors pursuant to Section 452.340.8 and Rule 88.01 is rebutted as being unjust or inappropriate because it is based upon income figures for the parties that are contrary to the findings of the Court.

The trial court was mistaken in its terminology. Under *Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo.App.1996), this court recognized that the concepts of "rejection" and "rebuttal" of a Form 14 calculation often are confused. *Id.* at 378. In doing so, the court noted that "rejection" "occurs when the trial court finds that: 1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or, 3) the mathematical calculation is incorrect." *Id.* On the other hand, "rebuttal" of the Form 14 calculation "occurs when the trial court determines the amount is unjust or inappropriate after consideration of all relevant factors." *Id.* at 378–79. As such, the trial court here actually rejected the parties' Form 14 calculations based on the inclusion of incorrect income amounts, rather than rebutting the parties' Form 14 PCCSA amounts as being unjust or inappropriate.

appellant contends was not supported by the evidence for inclusion in the trial court's Form 14 calculations. If the appellant is correct, then the trial court's child support awards, both prospective and retroactive, based on its PCCSA calculations including the $551, would be in error, requiring us to either reverse the awards and remand the case for further proceedings or do our own calculations and enter the proper awards, providing the record is sufficient for this purpose. *Woolridge*, 915 S.W.2d at 381–82.

As to the $551 in additional child rearing costs, included by the trial court in its Form 14 calculations and as allowed at Line 6 of the form, the record reflects that it was comprised of $111 for "health insurance cost" for the minor child, found at Line 6c of the form, and $440 for an "extraordinary expense," as found at Line 6e. We address these expenses separately, *infra*.

### A. Health Insurance Cost

There is no dispute between the parties that the $111 included in the trial court's Form 14s represented the respondent's proportionate share of the cost of the health insurance she was ordered by the court to carry for the benefit of the parties' minor child. The appellant contends that it was error for the court to include this amount in its Form 14 calculations because he was also ordered to provide health insurance at his own expense and the evidence did not support the court's ordering both parties to carry health insurance. Specifically, he contends that "[w]hile a court may have broad discretion to determine *which* health insurance is better suited, it has no power to order *both* to be carried – absent some extraordinary circumstances supported by the evidence." He argues that no such evidence was presented.

Under § 454.603.7, RSMo Supp.1997:

If two or more health benefit plans are available to one or both parents that are

complementary to one another or are compatible as primary and secondary coverage for the child, the court or the division may order each parent to maintain one or more health benefit plans for the child.

Thus, under this statute, the trial court has the discretion to order that both parties provide the child with health insurance benefits. *Lenger v. Lenger*, 939 S.W.2d 11, 13 (Mo.App.1997). Giving the language of the statute its plain and ordinary meaning, *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. *banc* 1998), we find nothing requiring a showing of "extraordinary circumstances" before ordering both parents to maintain health insurance on a child, as the appellant contends. As such, the trial court's inclusion of $111 in its Form 14 calculations as a health insurance cost of the respondent was not error on the basis claimed by the appellant.

### B. Extraordinary Child Rearing Costs

The appellant also claims in this point that the trial court erred in including in its Form 14 calculations $440 in extraordinary child rearing costs without sufficient evidentiary support for the same. In this respect, the record does reflect that the trial court included such an expense in its calculations, but did so without specifying the purpose. Although the trial court failed to indicate the purpose of the expense, both parties agree that it was for educational expenses for private secondary schooling for the children.

Form 14, Line 6e, provides for the inclusion of "extraordinary child rearing costs" in determining the PCCSA. With respect to these costs, the accompanying comment provides, in pertinent part:

Post-secondary educational expenses and private or parochial elementary, middle and high school expenses are not included in the schedule of basic child support obligations; therefore, these expenses may be included in Form No. 14 as an "other extraordinary child-rearing

cost" if the parents agree or the court orders that the parents contribute to payment of these expenses.

"Other extraordinary child-rearing costs" may include, but are not limited to, the cost of tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel or other activities intended to enhance the athletic, social or cultural development of a child.

An order may include the cost of tuition, room and board, books, fees and other reasonable and necessary expenses.

Form 14, Line 6e, *Comment A.* Therefore, although educational expenses are not included in the basic Form 14 calculation of the PCCSA, the trial court can consider the cost of private schooling in determining the child support award, *Halupa*, 980 S.W.2d at 329; *Schmidt v. Schmidt*, 949 S.W.2d 117, 120 (Mo.App.1997), and we will not disturb its decision with regard thereto "unless the evidence is 'palpably insufficient' to support it." *Schmidt*, 949 S.W.2d at 120.

 We first address whether the evidence was sufficient here to support the inclusion of any amount as an expense for private schooling in the trial court's Form 14 calculations. "In decisions concerning education beyond that provided by the state system, Missouri courts tend to defer to the judgment of the custodial parent." *Garner v. Garner*, 973 S.W.2d 513, 515 (Mo.App.1998). " '[T]he trial court does not need agreement by the parents in order to include an extraordinary expense in its calculations.' " *Id.* (*quoting Leslie v. Leslie*, 948 S.W.2d 458, 462 (Mo.App. 1997)).

At trial, the respondent testified that she enrolled the parties' children in the Learning Unlimited Christian Academy for the following reasons:

My son has been in the Blue Springs School District all his life. He was a junior last year and a straight F student. He was not – he was kicked out for behavior and sent him [sic] to Crittenton. He was flunking and going nowhere fast.

I put him in a religious school where he could get more individual attention and they could help him. He's graduating this year. He has a 3.25 grade point average and headed to college.

My daughter was reading in beginning third grade last year on first grade level. She could not even pronounce the word "the" in the Blue Springs School District. They were going nowhere.

I put them where I knew they could get individual attention.

Based on this testimony, the trial court was free to include in its Form 14 calculations a reasonable amount for private schooling. The question is whether the evidence supported the inclusion of $440 in such expenses. *Samples*, 954 S.W.2d at 597.

 After a thorough review of the record, we find no evidence to support the trial court's inclusion in its calculations of $440 in extraordinary child rearing costs for private schooling. The only evidence regarding school expenses was found in the respondent's income and expense statement, in which she listed $200 for "school and books" and $30 for "school lunches." The statement does not indicate the time period for which the expenses were effective nor does it indicate if they were averaged over twelve months or were for the nine months of the school year, etc. As such, the trial court's Form 14 calculations for one child and two children, based on $440 in private school expenses, were not supported by the evidence. And, because we find the record insufficient for us to determine the correct calculations, we are required to reverse the trial court's award of child support and remand with instructions for it to recalculate the PCCSA, pursuant to Form 14, and make specific findings supporting the inclusion of any amount for extraordinary expenses for

private schooling. *Id.; Pelch v. Schupp,* 991 S.W.2d 729, 736 (Mo.App.1999). In doing so, the trial court is free to hear additional evidence on this issue.

## IV.

In Point IV, the appellant essentially makes the same claim he makes in Point III, that the trial court's Form 14 calculations were incorrect because they included $551 in extraordinary child rearing costs which were not supported by the evidence, except with respect to its retroactive award of child support.

Section 452.340 authorizes the award of retroactive child support, but it is not mandatory that the trial court make such an award. *C.A.V. v. S.L.D.*, 996 S.W.2d 777, 778–79 (Mo.App.1999) (*citing Mistler v. Mistler,* 816 S.W.2d 241, 255 (Mo.App.1991)); *Gerhard,* 985 S.W.2d at 935. Retroactive child support does not have to be prayed for specifically in the petition, "providing the award is consistent with the substantive allegations of the petition, is requested on the record, and supported by the evidence." *Gerhard,* 985 S.W.2d at 935. In general, "[a] party is entitled to receive credit against the retroactive award of temporary support for the voluntary amounts paid to the child between the time of separation and the time of trial." *Halupa,* 980 S.W.2d at 328.

The appellant does not challenge the appropriateness of a retroactive child support award, but contests the amount awarded based on the same argument made in Point III. Because we found in Point III, *supra,* that the Form 14 calculations by the trial court were not supported by the record, we necessarily find that the trial court's retroactive award based thereon was also in error, requiring us to reverse it. As such, on remand, after recalculating its prospective award of child support, the trial court is required, based on its recalculation, to determine the correct retroactive award. *Pelch,* 991 S.W.2d at 736; *Gerhard,* 985 S.W.2d at 934.

In addition to his contention that the trial court's calculation of retroactive child support was erroneous, the appellant asserts in the argument portion of his brief in Point III: "The [trial] court originally gave Appellant no credit for nearly $5000.00 paid in support after the filing of the Petition for Dissolution and ignored payments that Appellant made on Respondent's automobile in the amount of $4–500.00 per month." (Citations omitted.) Although it appears to us from the record that the trial court did take such amounts into consideration in its award of retroactive award of child support, we do not have to address the issue. This is so because, if a point relied on does not comply with Rule 84.04, nothing is preserved for appeal, *Coleman,* 969 S.W.2d at 274, and we are not required to address it on the merits. *Id.* at 273. Rule 84.04(e) provides, in pertinent part: "The argument shall be limited to those errors included in the 'Points Relied On.'" In his brief, the respondent does not assert in Point IV that the trial court failed to consider his previous payments in entering its retroactive award. "The questions for decision on appeal are those stated in the points relied on; a question not there presented will be considered abandoned." *Schmidt v. Warner,* 955 S.W.2d 577, 583 (Mo.App.1997). Hence, the issue of whether the trial court erred with respect to credits against its retroactive award of child support is taken as abandoned.

## Conclusion

The judgment of the circuit court dissolving the parties' marriage is affirmed, except with respect to its prospective and retroactive awards of child support, which are reversed and the case remanded to the court for further proceedings in accordance with this opinion.

HOWARD and HOLLIGER, JJ., concur.