

# In the Missouri Court of Appeals

# Eastern District

## DIVISION III

| | | |
|---|---|---|
| ERICA HOLLINS, | ) | No. 102093 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Michael D. Burton |
| CAPITAL SOLUTIONS INVESTMENTS I, | ) | |
| INC., D/B/A LOAN EXPRESS CO., | ) | |
| | ) | |
| Respondent. | ) | FILED:  June 2, 2015 |

Introduction

Appellant Erica Hollins ("Hollins") appeals from the judgment of the trial court granting summary judgment in favor of Respondent Capital Solutions Investments I, Inc. ("CSI") and dismissing Hollins's First Amended Petition in its entirety.  Hollins's First Amended Petition sought to set aside a default judgment obtained by CSI in a collections action brought against Hollins.  On appeal, Hollins asserts that the trial court erred in granting CSI's motion for summary judgment because:  (1) the trial court that entered the default judgment in the collections action lacked subject matter jurisdiction and therefore the judgment should be set aside under Rule 74.06(b)(4); and (2) it is no longer equitable for the judgment to remain in force because it is an illegal judgment requiring court supervision and therefore the judgment should be set aside under Rule 74.06(b)(5).[1]

---

[1] All rule references are to Mo. R. Civ. P. (2014).

Because the trial court had subject matter jurisdiction over the collections lawsuit filed by CSI, the judgment entered by trial court was valid and not subject to being set aside as a void judgment under Rule 74.06(b)(4). Furthermore, the facts in the record do not warrant the application of Rule 74.06(b)(5) because enforcement of the default judgment is not inequitable. Finding no error, we affirm the judgment of the trial court.

## Factual and Procedural Background

In December 2006, Hollins obtained a consumer installment loan from Loan Express in the amount of $100 and at an annual interest rate of 199.71%. Loan Express is a fictitious name registered by CSI for its business. Hollins signed a promissory note promising to repay Loan Express a total of $155, which was to be paid in five monthly installments of $31 each beginning on January 21, 2007. Hollins paid the first monthly installment on January 21, 2007, but made no further payments. At the time of default, Hollins owed $124 to CSI, $69 of which was principal.

Between February 21, 2006, and May 21, 2007, CSI attempted to contact Hollins approximately fifty times and sent six letters to Hollins inquiring about the status of her payment on the installment loan. When Hollins continued to fail to pay on the loan, CSI filed a collections lawsuit (the "collections action") against Hollins in the Associate Circuit Division of the Circuit Court of St. Louis County on June 30, 2009. Hollins did not answer or otherwise respond to the lawsuit. On August 11, 2009, the trial court entered a default judgment in favor of CSI and against Hollins for $912.50 at the interest rate of 199.71% ("the 2009 default judgment"). Of that judgment, $729.90 was interest. While that interest rate appears obscene and usurious, as noted in the concurring opinion filed by Judge Dowd, this high rate of interest is permitted under the current statutory scheme enacted by the legislature. In April 2010, CSI began garnishing Hollins's wages to satisfy the judgment.

2

On October 20, 2011, more than two years after the entry of default judgment, Hollins filed suit against CSI in the Circuit Court of St. Louis County. Hollins subsequently filed an amended petition ("the First Amended Petition") alleging three counts against CSI. Count I alleged violations of the Missouri Merchandising Practices Act ("MMPA"), Section 407.101; Count II alleged a violation of Section 408.553; and Count III sought relief from the 2009 default judgment under Rule 74.06(b). The common factual underpinning of each count was Hollins's averment that CSI was required to state how interest was calculated in its 2009 collections action petition but failed to do so. Had CSI included such information in the collections action petition, the trial court would have realized that CSI violated Section 408.553 by allowing interest to accrue between the time of default on the loan and the entry of the default judgment against Hollins. Because CSI did not include the necessary interest calculation information in its petition, Hollins alleged that CSI failed to state a claim upon which relief could be granted. As a result, Hollins averred the trial court lacked subject matter jurisdiction over the collections action, and that the default judgment should have been set aside as a void judgment under Section 74.06(b)(4). In addition, Hollins argued that because the default judgment allows recovery of an illegal judgment due to the excessive interest rate, the judgment was "no longer equitable" and should not be enforced under Section 74.06(b)(5).

Hollins voluntarily dismissed Count I of the First Amended Petition on January 2, 2013. Approximately one week later, Hollins filed a motion for class certification seeking to certify a class defined as "all people who, in Missouri, received a consumer installment loan from [CSI], and prior to obtaining judgment, charged interest on the amount owed at the time of default." The trial court granted the motion and certified the class.[2]

---

[2] Because the record before us is limited to facts regarding Hollins, our opinion will refer to Hollins only and not the class as a whole.

On March 24, 2014, CSI filed a motion for summary judgment seeking dismissal of Hollins's First Amended Petition. In support of its motion, CSI argued that: (1) the claims raised by Hollins were compulsory counterclaims that must have been brought by Hollins in the original collections action; (2) Rule 74.06(b) cannot provide Hollins relief because the trial court in the collections action had subject matter jurisdiction and twenty-six months was not a reasonable time within which to bring a claim; and (3) Rule 74.06(d) could not provide Hollins with the relief requested because Hollins made no allegation of extrinsic fraud.

The trial court agreed with CSI and entered summary judgment in its favor. In its Order and Judgment, the trial court found that the allegations in Hollins's First Amended Petition were compulsory counterclaims that should have been brought by Hollins in the original collections action. The trial court then looked to Rule 74.06(b) and found that the 2009 default judgment could not be set aside under that rule because (1) the trial court in the collections action had subject matter jurisdiction and thus the judgment was not void; and (2) Hollins waited too long – twenty-six months – to file her petition. Finally, the circuit court held that because Hollins did not allege extrinsic fraud, she was not entitled to relief under Rule 74.06(d). For the same reasons the trial court dismissed Hollins's case, the court dismissed the claims of all class members. This appeal follows.

Points on Appeal

Hollins raises two separate, though interrelated, points on appeal. Hollins first asserts that the trial court erred in granting CSI's motion for summary judgment because the trial court that entered the 2009 default judgment lacked subject matter jurisdiction, and therefore the judgment should be set aside under Rule 74.06(b)(4). Specifically, Hollins argues that CSI failed to state a claim upon which relief could be granted and that such failure deprived the trial court of subject matter jurisdiction. In her second point on appeal, Hollins contends that the trial court erred in granting

4

CSI's motion for summary judgment because equity precludes enforcement of the 2009 default judgment which should be set aside under Rule 74.06(b)(5).

## Standard of Review

Our review of the grant of a motion for summary judgment is essentially *de novo*. ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of initially sustaining the motion. Id. The propriety of summary judgment is purely an issue of law. Id. Because the trial court's judgment is based upon the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. Id.

To be entitled to summary judgment, the moving party must establish it is entitled to judgment as a matter of law and that there is no genuine dispute as to the material facts. Id. at 380. We will affirm the trial court's grant of summary judgment if it could have been based on any ground raised in the motion and supported by the summary judgment record. Burian v. Country Ins. and Financial Services, 263 S.W.3d 785, 787 (Mo. App. E.D. 2008).

## Discussion

This appeal invokes Rule 74.06 as a basis for overturning the trial court's entry of the 2009 default judgment. Hollins's appeal focuses on the trial court's refusal to set aside the 2009 default judgment under Rule 74.06. Accordingly, we limit our review and analysis to determine if Rule 74.06 provides Hollins with any basis for setting aside the judgment.[3] "Rule 74.06 provides various grounds by which a court may set aside a final judgment after a court has ruled on the merits of the

---

[3] In her reply brief Hollins argues that the trial court erroneously applied the compulsory counterclaim rule when it granted summary judgment in favor of CSI. Hollins argues this erroneous application of the rule compels reversal and remand of the trial court's judgment. Because Hollins does not raise this issue in either of her Points Relied On, we will not now address that issue. Rule 84.04(d); Rule 84.13. An assignment of error raised for the first time in a reply brief is not reviewed. 66, Inc. v. Crestwood Commons Redevelopment Corp., 130 S.W.3d 573, 584 (Mo. App. E.D. 2003).

case." Juenger v. Brookdale Farms, 871 S.W.2d 629, 631 (Mo. App. E.D. 1994) (internal quotations omitted). Rule 74.06 provides, in relevant part:

> **(b) Excusable Neglect--Fraud--Irregular, Void, or Satisfied Judgment.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

Rule 74.06(b).

## I.     Relief Under Rule 74.06(b)(4)

In her first Point Relied On, Hollins invokes Rule 74.06(b)(4) which allows a court to relieve a party from a judgment if the judgment is void. Specifically, Hollins contends that the 2009 default judgment is void, and that the trial court erred when it refused to set aside the default judgment and granted summary judgment in favor of CSI. Accordingly, we consider whether the 2009 default judgment is a void judgment.

"A judgment is 'void' under this rule only if the court that rendered it lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process of law." Forsyth Fin. Grp., LLC v. Hayes, 351 S.W.3d 738, 740 (Mo. App. W.D. 2011). A judgment is not void merely because it is erroneous. Id. We review *de novo* whether a judgment should be vacated because it is void. Morris v. Wallach, 440 S.W.3d 571, 575 (Mo. App. E.D. 2014).

Hollins suggests the 2009 default judgment is void because the trial court lacked subject matter jurisdiction at the time it entered the default judgment. Specifically, Hollins claims that CSI's petition in the collections action did not plead certain statutorily required elements and therefore failed to state a cause of action. By failing to state a claim upon which relief could be granted,

6

Hollins posits that CSI "robbed the trial court of subject matter jurisdiction," thereby rendering the 2009 default judgment void. We disagree.

While we agree that the 2009 default judgment would be a void judgment had the trial court lacked subject matter jurisdiction when it entered the judgment, Hollins's argument is fatally flawed by her erroneous interpretation of subject matter jurisdiction. Subject matter jurisdiction is the court's authority to render a judgment in a particular category of case. Webb v. Wyciskalla, 275 S.W.3d 249, 253 (Mo. banc 2009). In Missouri, subject matter jurisdiction is governed directly by the Missouri Constitution. Id. Article V, Section 17 describes the subject matter jurisdiction of associate circuit judges and provides that "Associate circuit judges may hear and determine all cases, civil or criminal and all other matters as now provided by law for magistrate or probate judges and may be assigned such additional cases or classes of cases as may be provided by law."

CSI filed a civil collections action against Hollins. The associate circuit judge had subject matter jurisdiction under Article V, Section 17 to hear cases of this general nature. We recognize that prior to Webb a defaulting party could assert that a petition failing to state a claim deprived a trial court of subject matter jurisdiction. See AMG Franchises, Inc. v. Crack Team USA, Inc., 289 S.W. 3d 655, 659 (Mo. App. E.D. 2009). However, this characterization of the issue was clarified by the Supreme Court in Webb. Webb, 275 S.W.3d at 253-54.

More recently, the Western District rejected strikingly similar arguments to those raised by Hollins in this appeal. In A.D.D. v. PLE Enterprises, Inc, the Western District noted the Supreme Court's admonition against the overly broad use of the term subject matter jurisdiction. In holding that challenging a default judgment for failure to state a claim does not raise an issue of the trial court's subject matter jurisdiction, the Western District rejected an attempt to seek relief from a default judgment by characterizing the judgment as void under Rule 74.06(b)(4). A.D.D. v. PLE Enterprises, Inc., 412 S.W.3d 270, 276-77 (Mo. App. W.D. 2013); see also Christianson v. Goucher,

7

414 S.W.3d 584, 591 (Mo. App. W.D. 2013)(noting its recent opinion in <u>A.D.D.</u> when rejecting the argument that the failure to state a claim raises an issue of subject matter jurisdiction)). The court explained that with <u>Webb</u>, "the Missouri Supreme Court clearly delineated the boundaries of subject matter jurisdiction and strongly admonished against the overly broad use of the term subject matter jurisdiction. Thus, after <u>Webb</u>, moving to set aside a judgment for failure to state a claim does not raise an issue of the circuit court's subject matter jurisdiction." <u>Id.</u> (internal quotations omitted). Hollins offers no other basis to support its contention that the trial court lacked subject matter jurisdiction to enter its judgment. Nor does the record before us suggest the absence of subject matter jurisdiction.

Hollins correctly notes that Section 408.556 specifically instructs a lender what it must plead in an action brought against a borrower arising from default. Hollins further argues that CSI did not properly plead its action against Hollins because it did not state in its petition how the amount owed to the lender was calculated. CSI disputes that its pleading was deficient. We need not evaluate the sufficiency of CSI's petition because even assuming, *arguendo,* that it failed to meet the requirements of Section 408.556 and thus failed to state a cause of action, such failure does not deprive the trial court of subject matter jurisdiction. <u>See id.</u>

Hollins further suggests that the "heightened notice requirement" incorporated into Section 408.556 distinguishes this case from an ordinary failure to state a claim issue and thereby introduces the issue of subject matter jurisdiction. We find this argument unavailing. First, Hollins's authority for this argument, <u>Ford Motor Credit v. Updegraff</u>, 218 S.W.3d. 617 (Mo. App. W.D. 2007), predates the Supreme Court's pronouncement on subject matter jurisdiction in <u>Webb</u>. <u>Updegraff</u> also predates numerous appellate cases applying <u>Webb</u> and clearly holding that a failure of a petition to properly state a cause of action does not deprive a trial court of subject matter jurisdiction. <u>See, e.g.,</u> <u>Christianson,</u> 414 S.W.3d at 591; <u>A.D.D.</u>, 412 S.W.3d at 276. Second, we find no legal distinction in

8

a party's failure to plead a required element of a statutory cause of action as opposed to a common law cause of action. We fail to see how that factual distinction somehow counters <u>Webb</u> and its progeny by transforming a deficient pleading into an inquiry of subject matter jurisdiction. Nor has Hollins offered any post-<u>Webb</u> judicial authority in support of its position. Were we to take Hollins's argument to its logical conclusion, almost any defective pleading in a statutory cause of action would give rise to claim that the trial court lacked subject matter jurisdiction to enter a judgment on such pleading. We acknowledge the seemingly hopeless situation in which Hollins now finds herself as a result of the unlimited rates of interest allowed on small unsecured consumer loans. However, to provide her the remedy she seeks under Rule 74.06(b)(4) would require us to abandon the principles of subject matter jurisdiction to which we must adhere. We will not controvert the law to provide Hollins the relief requested.

Because the trial court did not lack subject matter jurisdiction to enter the 2009 default judgment, the default judgment was not void under Rule 74.06(b)(4). Because the 2009 default judgment was not void, Rule 74.06(b) provided the trial court with no legal basis to set it aside. The recent clarification of the scope and breadth of subject matter jurisdiction by the Supreme Court compels our denial of Point One.

## II. Relief Under Rule 74.06(b)(5)

In Point Two, Hollins contends that the 2009 default judgment may be set aside under Rule 74.06(b)(5). This subsection empowers the trial court to grant relief from the effects of a final judgment on the ground that, "it is no longer equitable that the judgment remain in force." As this Court has noted,

> This component of [Rule 74.06(b)(5)] is based on traditional equity practice which limits its application to judgments that have a prospective effect, as contrasted to those that offer a present remedy for a past wrong. It addresses the situation in which a subsequent circumstance makes enforcement of such a judgment inequitable.

9

Juenger, 871 S.W.2d at 631.

Again, while we are very sympathetic to Hollins's circumstances, we find no authority allowing us to set aside the 2009 default judgment under Rule 74.06(b)(5). Like the trial court, we "do not cavalierly" reject Hollins's claims as she now faces obscenely high repayment obligations from a $100 loan. However, we cannot ignore the law that clearly limits application of Rule 74.06(b)(5) to situations where a subsequent circumstances makes enforcement of the judgment inequitable. Hollins does not allege the occurrence of any *subsequent* circumstance that precludes enforcement of the judgment on equitable grounds. Instead, Hollins directs this Court to the entry of the 2009 default judgment and asks that we set aside the judgment because it is "based on illegal calculations of interest." Unfortunately for Hollins, these allegations simply do not meet the requirements for setting aside a judgment under Rule 74.05(b)(5).

Hollins argues that the interest award was outside of the statutory parameters given CSI's collections action petition. However, even if Hollins had a meritorious defense to CSI's claim at the time judgment was entered, an irregular or erroneous judgment is not subject to a subsequent collateral attack. J.L.M. v. R.L.C., Jr., 132 S.W.3d 279, 284 (Mo. App. W.D. 2004). While the amount of the default judgment seems egregious and would likely shock the conscience of the average person, Hollins is not without fault for her precarious situation. To be sure, Hollins was not without legal remedies to challenge the judgment sought and obtained by CSI. As the trial court noted, Hollins could have brought her current claims as counterclaims in the action brought by CSI. Moreover, Hollins could have filed a timely motion seeking to set aside the default judgment. Had Hollins availed herself of those opportunities to challenge the amount of interest claimed by CSI under the agreement, she would have obtained a massive reduction in the amount of interest recoverable by CSI under Missouri law. Our resolution of Hollins's second point on appeal is dictated solely by her failure to avail herself of such remedies.

Rule 74.05(d) provides the proper procedure for setting aside a default judgment and requires that the party seeking to set aside the default judgment file a motion to set aside within one year of the entry of default judgment. A motion to set aside must state facts constituting a meritorious defense and good cause. Rule 74.05(d). Here, not only did Hollins wait two years to file her action seeking to aside the 2009 default judgment, but her petition did not allege facts constituting a meritorious defense and good cause, as required by Rule 74.05(d). Point Two is denied.

### Conclusion

Neither Rule 74.06(b)(4) nor Rule 74.06(b)(5) provides a legal means for setting aside the 2009 default judgment. Accordingly, the entry of summary judgment in favor of CSI was not error and we affirm the judgment of the trial court.

_____
Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., Concurs in separate opinion
Gary M. Gaertner, Jr., Concurs in separate concurring opinion by Judge Robert G. Dowd, Jr.

11



# In the Missouri Court of Appeals
# Eastern District

DIVISION THREE

ERICA HOLLINS, And on Behalf of All Others Similarly Situated,

        Appellant,

vs.

CAPITAL SOLUTIONS INVESTMENTS, INC., d/b/a LOAN EXPRESS CO.,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)

No. ED102093

Appeal from the Circuit Court of St. Louis County

Hon. Michael D. Burton

Filed: June 2, 2015

CONCURRING OPINION

I concur in the opinion of the court. I write separately to express my concern that Section 408.500, which was designed for unsecured loans of five hundred dollars or less, has through the allowance of practically unlimited interest rates charged on these loans allowed the companies that provide these loans to use the court system to collect amounts from debtors far beyond anything that could be deemed consistent with the statute's original purpose.

This case provides a clear example of predatory lending. The following basic facts exemplify the situation of the class action members in this case:

> Class member, D.W., took out a $100 loan from CSI. A judgment was entered against him for $705.18; the garnishment is still pending. So far, $3174.81 has been collected, and a balance of $4105.77 remains.

> Class member, S.S., took out an $80 loan from CSI. A judgment was entered against her for $2137.68; the garnishment is still pending. So far, $5346.41 has been collected, and a balance of $19,643.48 remains.

Class member, C.R., took out a $155 loan from CSI. A judgment was entered against her for $1686.93; the garnishment is still pending. So far, $9566.15 has been collected, and a balance of $2162.07 remains.

Class member, C.N., took out a $155 loan from CSI. A judgment was entered against him for $1627.44. There is now a lien on C.N.'s property.

Class member, S.L., took out a $360 loan from CSI. A judgment was entered against her for $1305.17; the garnishment is still pending. So far, $6021.80 has been collected, and a balance of $2182.90 remains.

Class member, F.H., took out a $100 loan from CSI. A judgment was entered against her for $380.82; the garnishment is still pending. So far, $3935.54 has been collected, and a balance of $707.98 remains.

Class member, B.D., took out a $200 loan from CSI. A judgment was entered against her for $853.05; the garnishment is still pending. So far, $4692.31 has been collected, and a balance of $1531.57 remains.

Such drastic imbalances in what is borrowed, what is paid back, and what is still owed demonstrate the inherent injustice in these lending arrangements. As shown above, a $100 loan can quickly become a judgment worth thousands of dollars, which will be beyond the ability of many debtors to ever pay off.

Prior to adoption of Section 408.500, Missouri lenders making unsecured small loans under $500 could only charge borrowers either a maximum interest rate of 26.6% per annum on the unpaid principal balance or a one-time flat fee of $10 in lieu of interest. Barry Service Agency Co. v. Manning, 891 S.W.2d 882, 891 (Mo. App. W.D. 1995). Before Section 408.500 was enacted in 1990, there were only about ten companies in Missouri making unsecured loans, all of whom offered only very small loans and charged the flat $10 fee. Id. In enacting Section 408.500, the General Assembly clearly desired to make unsecured loans under $500 more available to those Missouri citizens needing them. Id. On the other hand, it also desired to afford some regulatory protection to borrowers and to discourage so-called "loan sharking" activities. Id. Thus, while Section 408.500 was intended to allow greater latitude and flexibility in the rates lenders charge borrowers for unsecured loans under $500, the General Assembly

2

did not completely abandon the traditional stance of regulating those rates. Id. Had it intended for lenders to be able to charge any interest rate they chose, Section 408.500 would have been unnecessary, except to require that lenders register and pay a licensing fee. Barry Service Agency, Inc., 891 S.W.2d at 891. The General Assembly did not choose that option, but instead steered a middle course between total deregulation and absolute rate uniformity. Id. Initially, Section 408.500 included a provision that provided:

> . . . lenders shall not charge, contract for or receive on such loans interest or any fee of any type or kind whatsoever which exceed the approved rate as provided in this subsection. Lenders shall file a rate schedule with the director who, upon review, shall approve rates comparable with those lawfully charged in the marketplace for similar loans. In determining marketplace interest rates, the director shall consider the appropriateness of rate requests made by lenders and rates allowed on similar loans in the states contiguous to Missouri. If the director takes no action upon a filed rate schedule within thirty days of receipt, then it shall be deemed approved as filed. The director, on January first and July first of each year, shall consider the filing of new interest rate schedules to reflect changes in the marketplace. The director may promulgate rules regarding the computation and payment of interest, contract statements, payment receipts and advertising for loans made under the provisions of this section.

Then, in 2001, Section 408.500 was amended and all of the above language was removed so that now the only limit on interest rates is found in Section 408.100, which provides, in pertinent part, ". . . any person, firm, or corporation may charge, contract for and receive interest on the unpaid principal balance at rates agreed to by the parties."

Of course, lenders are entitled to recover interest on these loans. However, the only current limit on the amount of this interest is that the parties must agree to a rate. As a practical matter, this means there is no limit on the interest rate that can be charged. The debtor in these types of situations has absolutely zero power to negotiate a reasonable interest rate; instead, such debtors will pay whatever amount the lender decides to charge.

As a result, I believe Section 408.500 has through amendment and through the unregulated nature of the marketplace been gutted of its original intended purpose, which was to make these small

3

loans more available to consumers to help them through a temporary financial difficulty. Currently, a person, who seeks relief in the form of a loan under Section 408.500, assumes a small debt that, in a relatively short period of time, can become an insurmountable debt. I recognize the debtors bear responsibility for defaulting on these loans, failing to appear to answer the petitions of the lenders, and for failing to timely file motions to set aside default judgments taken against them. However, as can be seen at the beginning of this concurrence, the amount the lenders are collecting or are attempting to collect on these types of loans shocks the conscience.

Erica Hollins is the main representative of the class whose case was examined the closest by the majority and the trial court. As noted by Hollins in her brief, she took out a $100 loan from CSI on December 21, 2006. Then she defaulted in early 2007 when she owed $69 in principal. CSI began charging interest on the loan immediately after Hollins defaulted. However, CSI did not pursue legal action until it filed its petition in June of 2009, over two years later. At the time Hollins filed her brief, she had paid $3,592.35 on a $100 loan.

CSI's petition for breach of contract against Hollins states, in pertinent part "there is now due thereon the principal sum of $124.00, plus interest thereon at the rate of 199.71% per annum from May 21, 2007, the date of default, which up to the time of this petition amount to $688.25, plus attorney's fees of $18.60 and late fees of $40.00."

Subsequently, the trial court entered its default judgment awarding CSI $124.00 in principal, $40.00 in late fees, $18.60 in attorney's fees, and $729.90 in interest, for a total judgment of $912.50. After the judgment was entered, CSI began garnishing Hollins' wages. I believe the trial court's judgment violates the statutory limitation on prejudgment interest. Section 408.553 provides: "Upon default the lender shall be entitled to recover no more than the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of *final judgment together with*

4

*interest thereafter* at the simple interest equivalent of the rate provided in the contract" (emphasis added). This statute indicates interest on these types of loans does not begin to accrue until the date of a "final judgment" and then only at the "simple interest equivalent of the rate provided in the contract." Therefore, the trial court's judgment, which includes $729.90 in interest from the date the debtor defaulted until the date of the default judgment is in violation of the statute.

Had Hollins or any similarly situated class member filed a timely motion to set aside the default judgment taken against them on these grounds, such motion could have been successful under Rule 74.05(d).[1] However, that did not happen.

Instead, these judgments are now being attacked in a class action for lacking subject matter jurisdiction. I agree with Judge Odenwald's majority opinion that the judgments are not void for lack of personal or subject matter jurisdiction. Further, based on the facts of this case, the judgments are not void for being entered in a manner inconsistent with due process of law.

Thus, at this stage of the case, there is no remedy for this injustice. The legislature ought to examine Section 408.500 and related statutes and return them to their original purpose of allowing small loans at manageable interest rates to aid our fellow citizens in managing the obligations of their daily lives.

ROBERT G. DOWD, JR., Judge

---

[1]Even if such a motion had been successful, the debtors still may have ended up owing insurmountable amounts of post-judgment interest because, as noted above, the legislature has effectively not put any other limits on the amounts of interest allowed to be collected on these types of loans.